UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| EVERCARE PROTECTION, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 4:25-cv-360 |
| HEADSTART WARRANTY GROUP, LLC, | ) ) ) |
| Defendant. | ) ) |

## COMPLAINT

Plaintiff, Evercare Protection, LLC, by and through its undersigned counsel, states as its Complaint against Headstart Warranty Group, LLC, as follows:

## THE PARTIES

1. Plaintiff, Evercare Protection, LLC, ("Evercare") is a Delaware limited liability company with its principal place of business at 7150 E. Camelback Road, Suite 444, Scottsdale, AZ.

2. Plaintiff's sole member is Chris Weinreis, who is a resident of Missouri.

3. Defendant, Headstart Warranty Group, LLC, ("Headstart") is a Nevada limited liability company with its principal place of business at 14114 N. Dallas Pkwy, Suite 600, Dallas, Texas.

4. Upon information and belief, Defendant's sole member is Timothy Schuur, a resident of Texas.

## JURISDICTION AND VENUE

5. There is complete diversity of citizenship between Plaintiff (a citizen of Missouri) and Defendant (a citizen of Texas), and the amount in controversy excess $75,000, exclusive of costs, fees, and interests. Thus, the Court has subject-matter jurisdiction over the present action pursuant to 28 U.S.C. § 1332.

6. Defendant is subject to general personal jurisdiction in this Court because Defendant is domiciled in Texas. Defendant is also subject to specific personal jurisdiction in this Court. Defendant has purposefully availed itself of the privileges and benefits of doing business in Texas and has the requisite minimum contacts with Texas, and Plaintiff's claims arise out of those contacts.

7. Venue is proper in this Court and Division pursuant to the forum selection clause in the parties' contract, in which the parties agreed the exclusive venue for all legal disputes between the parties shall be a federal or state court in Tarrant County, Texas.

## FACTUAL ALLEGATIONS

8. Plaintiff provides white-labeled and branded automotive and residential warranty products to its affiliated marketers.

9. Plaintiff works with a number of third party warranty administrators to design, manage, insure, and adjudicate claims for automotive and home warranty products.

10. Defendant is a third party warranty and claims administration company for automotive products.

11. Typically, an administrator such as Defendant works with its respective insurers to set rates for their warranty products, to which Plaintiff would add a markup(s) called an "offset."

The amount of the offset(s) is set at the discretion of Plaintiff and is paid to and retained by the Plaintiff.

## Producer Agreement

12. On or about August 30, 2023, Plaintiff entered into a Producer Agreement with Defendant (the "Agreement").[1]

13. Under the Agreement, Plaintiff was to market, promote and sell automotive service contracts to prospective Contract Holders, as that term was defined in the Agreement, under a service contract program designed and administered by Defendant. (Agreement, Sec. 1).

14. Under the Agreement, Plaintiff was to receive funding directly from the finance company on behalf of Defendant. This was done to simplify the flow of funds and to avoid placing an undue accounting burden on Defendant. (Agreement, Sec. 2.2).

15. The total amount financed by the finance company, less any fees and/or interest withheld by the finance company, would be all of the amounts to be paid to Plaintiff, which included any offset(s) to be paid to Plaintiff.

16. As a result, once Plaintiff received the funding from the Finance Company, Plaintiff retained the offset amounts and forwarded the remainder of the premium payments to Defendant, which was an amount that had been agreed upon in advance between Plaintiff and Defendant. (*Id.*)

17. Plaintiff and Defendant agreed that Defendant was to retain all unused reinsurance premiums and to increase its administrative fee for each warranty contract.

18. Plaintiff and Defendant also agreed that there were two (2) offsets that were to be paid to Plaintiff and ultimately retained by Plaintiff and Eleras Group, LLC ("Eleras"), one of Plaintiff's wholly owned subsidiaries.

---

[1] The Agreement contains a confidentiality provision, so Plaintiff has not attached it as an exhibit to this Complaint.

19. Eleras provides certain marketing services, including operating a call center for Contract Holders.

20. The first offset to be paid to Plaintiff was an "Offset Pack" of $350 per contract, which was later increased to $400 per funded contract ("Offset Pack Payment").

21. The Offset Pack Payment was refundable to the finance company on a *pro-rata* basis in the event that the underlying warranty contract was terminated by the Contract Holder or cancelled before it expired.

22. The second offset to be paid by Defendant (ultimately to Eleras) was a "Call Center Pack" of $250 for each contract, regardless of whether it was funded or not funded ("Call Center Pack Payment").

23. The Plaintiff and Defendant agreed that the Call Center Pack Payment was non-refundable, even if the contract was terminated or cancelled.

24. The reason the Call Center Pack Payment was non-refundable was because Plaintiff and Defendant had agreed that in exchange for Plaintiff allowing the Defendant to retain all unused reinsurance premiums and to increase its administrative fee per contract, that the Call Center Pack Payment would be non-refundable in return. (Collectively, the Offset Pack Payment and Call Center Pack Payment are referred to as the "Offset Pack Payments").

25. The premium rate sent by the seller to the finance company is calculated as the sum of Defendant's premium and the Offset Pack Payments due Plaintiff. Therefore, the amount sent by Plaintiff to Defendant is equal to the advance amount funded by the finance company less the Offset Pack Payments due Plaintiff.

26. The following flowchart shows the flow of funds as described in paragraphs 11 through 22 above using a hypothetical $1,400 premium:



27.	In the event that a warranty contract was canceled or terminated for any reason, Plaintiff bills Defendant for its unearned premiums and, once that unearned premium is received by Plaintiff from Defendant, Plaintiff returns Defendant's unearned premium and its unearned premium on the Offset Pack to the finance company.

28.	When Plaintiff and Defendant entered into the Agreement, the warranty contracts were financed by PayLink Payment Plans and the flow of funds followed that described in paragraphs 15 through 27 above.

**Change in Finance Companies from Paylink to Walco**

29.	However, in the middle of 2023, Plaintiff decided to move the financing from PayLink Payment Plans to WalCo Funding ("Walco").

30. Before Walco would serve as Plaintiff's finance company, Walco required Defendant to provide its consent for Plaintiff to be funded on the administrative premiums, i.e., for Walco to send payments directly to Plaintiff and then have Plaintiff send payments to Defendant.

31. Despite having given its consent to Paylink Payment Plans for payments to be sent direct to Plaintiff, Defendant refused to give the same consent to Walco.

32. Because Defendant would not give its consent to Walco for Plaintiff to receive the premium payments on its behalf, Walco had to fund the premium payments by sending those payments directly to Defendant.

33. Plaintiff agreed to allow Walco to fund the premium payments by sending them directly to Defendant provided Defendant agreed to then pay the Offset Pack Payments to Plaintiff and Eleras once Defendant had received its payments.

34. Defendant agreed to send Plaintiff and Eleras its Offset Pack Payments once Defendant received its payments.

35. Because all of the payments were now going through Defendant, as opposed to Plaintiff, Defendant became responsible for the flow of funds to and from the finance company, Walco, and for billing Plaintiff for unearned premiums.

36. With the new financing arrangement, the flow of funds was as follows using a hypothetical $1,400 premium:



37.     Immediately after the change in the flow of funds to Defendant's new model, Defendant began to have issues with supplying accurate reporting data for payments sent from Defendant to Plaintiff.

38.     While Plaintiff was receiving deposits from Defendant, Defendant was not providing Plaintiff with corresponding reporting data to allow Plaintiff to determine what dollar amounts needed to be applied to which insurance policies and for what purpose.

39.     Defendant then claimed that it had overpaid Plaintiff for unidentified overpayments for returned premiums, which should have been remitted by Defendant directly to Walco.

40.     As a result of Defendant's alleged overpayments to Plaintiff, Defendant started withholding the Offset Pack Payments in an attempt to recoup the alleged overpayments and then wrongfully withheld the Offset Pack Payments in excess of the alleged recoupment amount.

**Attempted Reconciliation**

41. On August 6, 2024, Plaintiff sent Defendant a demand letter demanding that Defendant pay it the Offset Pack Payments that Defendant had wrongfully withheld from Plaintiff.

42. In response, Defendant claimed that it needed to conduct a reconciliation of its accounts before it could respond to Plaintiff's demand.

43. In October 2024, Defendant provided Plaintiff with its purported reconciliation of its accounts. While Defendant's reconciliation contained numerous errors, after Plaintiff corrected those errors, Defendant's reconciliation revealed that Plaintiff was owed $2,809,901.98.

44. On October 22, 2024, Plaintiff demanded that Plaintiff pay it the $2,809,901.98 in wrongfully withheld Offset Pack Payments by October 28, 2024.

45. Defendant refused to pay Plaintiff for the wrongfully withheld Offset Pack Payments and invoked Section 12.6 of the Agreement, which required Plaintiff and Defendant to engage in mediation pursuant to the American Arbitration Association Commercial Mediation Rules before the initiation of any legal action.

46. On February 26, 2025, Plaintiff and Defendant engaged in mediation through the American Arbitration Association. The mediation was unsuccessful.

**COUNT I – BREACH OF CONTRACT**

47. Plaintiff adopts and incorporates by reference all of the allegations in the foregoing paragraphs.

48. The Agreement is a valid and enforceable contract.

49. Plaintiff has fully performed all of its obligations under the Agreement with Defendant.

50. Defendant is in breach of its Agreement with Plaintiff.

51. As a result of Defendant's breaches, Plaintiff has suffered damages in excess of $1,000,000.

52. Plaintiff is entitled to recover its damages and to conduct an accounting of Defendant's books and records.

### COUNT II - INDEMNIFICATION

53. Plaintiff adopts and incorporates by reference all of the allegations in the foregoing paragraphs.

54. Section 11.4 of the Agreement provides:

> 11.4  Administrator agrees to fully indemnify and hold harmless Producer and its affiliates (and their respective officers, managers, owners, directors, employees, representatives and agents) against any loss or liability, including but not limited to, fines, penalties, claims or other charges, suits, damages, costs, judgments, awards and reasonable attorney's fees, suffered by such entity or individual, arising out of:  (i) Contract Holders claims, class actions, TCPA violations to the extent arising out of Administrator's actions or inactions, (ii) any material inaccuracy of the representations and warranties of Administrator contained in this Agreement, (iii) any material breach of Administrator's duties under this agreement, or (iv) any willful or negligent misconduct of Administrator.  The obligations of Administrator contained in this section shall survive any termination or cancellation of this Agreement.

55. Plaintiff has an agreement with Eleras to provide certain marketing services, including operating a call center.

56. The non-refundable Call Center Pack that was to be paid by Defendant to Plaintiff was to be used for Plaintiff to pay Eleras for its marketing activities.

57. Because Defendant has failed to pay the Call Center Pack, Plaintiff has not paid Eleras for its marketing activities and owes Eleras for such activities.

58. Defendable must indemnify Plaintiff for the amounts that Plaintiff owes to Eleras.

59. Plaintiff is entitled to recover its damages and to conduct an accounting of Defendant's books and records, award it costs, and for such other relief as this Court deems to be equitable and just.

### COUNT III – CONVERSION (In the Alternative to Count I)

60. Plaintiff adopts and incorporates by reference all of the allegations in the foregoing paragraphs.

61. Both the Offset Pack and the Call Center Pack payments were sent to Defendant with the understanding that Defendant would segregate those amounts and then remit those amounts to Plaintiff.

62. Instead of segregating the Offset Pack and Call Center Pack payments and remitting those amounts to Plaintiff, Defendant converted those amounts for its own purpose.

63. Plaintiff has made repeated demands that Defendant pay it the wrongfully converted Offset Pack and Call Center Pack amounts, but Defendant has refused.

64. Defendant has no legal right to withhold the Offset Pack and Call Center Pack payment amounts from Plaintiff.

65. Plaintiff has the right to be paid the Offset Pack and Call Center Pack payment amounts.

66. As a direct and proximate cause of Defendant's conversion of the Offset Pack and Call Center Pack payment amounts, Plaintiff has been damaged in an amount to be proven at trial.

### COUNT IV – UNJUST ENRICHMENT (In the Alternative to Count I)

67. Plaintiff adopts and incorporates by reference the all of the allegations in the foregoing paragraphs.

68. Defendant is aware that the Offset Pack and Call Center Pack payments that it received from Walco belong to and are to be paid to Plaintiff.

69. By wrongfully withholding the Offset Pack and Call Center Pack payments for itself and refusing to pay them to Plaintiff, Defendant has been unjustly enriched at the expense of Plaintiff.

70. Thus, if no express agreement existed between Plaintiff and Defendant, which Plaintiff denies, then Plaintiff is alternatively entitled to be reimbursed for the amount of the Offset Pack and Call Center Pack payments that have been unjustly withheld by Defendant.

## PRAYER

WHEREFORE, Plaintiff, Evercare Protection, LLC, requests that this Court enter judgment in its favor and against Defendant Headstart Warranty Group, LLC, awarding Plaintiff:

    A. Actual damages;

    B. Exemplary damages (in connection with Plaintiff's conversion claim);

    C. An order for an accounting of Defendant's books and records;

    D. Reasonable attorneys' fees and costs; and

    E. Pre-judgment and post-judgment interest at the highest rate allowed by law; award it costs, and for such other relief as this Court deems to be equitable and just.

Respectfully submitted,

 /s/ Thadford A. Felton
Thadford A. Felton
*Pro Hac Vice Application Forthcoming*
State Bar No. IL 6224896
TFelton@ubglaw.com
UB Greensfelder LLP
200 West Madison Street
Suite 3300
Chicago, IL 60606-3607
Tel: 312.658.6500
Fax: 312.419.1930


 /s/ Derek Carson
T. Derek Carson
State Bar No. 24085240
dcarson@canteyhanger.com
**CANTEY HANGER LLP**
Cantey Hanger Plaza
600 West 6th Street, Suite 300
Fort Worth, TX 76102
(817) 877-2800
(817) 877-2807 – Fax

**ATTORNEYS FOR PLAINTIFF**