IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| EVERCARE PROTECTION, LLC, | ) |
| | ) |
| *PLAINTIFF*, | ) |
| | ) |
| V. | )   NO. 4:25-CV-00360-P |
| | ) |
| HEADSTART WARRANTY GROUP, LLC, | ) |
| | ) |
| DEFENDANT. | ) |

**DEFENDANT HEADSTART WARRANTY GROUP, LLC'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM**

Defendant Headstart Warranty Group, LLC ("Defendant"), a Nevada limited liability company, by and through the undersigned counsel, respectfully files this Second Amended Answer, Affirmative Defenses, and Counterclaim to the Complaint originally filed by Evercare Protection, LLC ("Plaintiff"). Subject to and without waiving any affirmative defenses and counterclaims, Defendant respectfully states as follows:

INTRODUCTION

1. Defendant is without knowledge to admit or deny the allegations contained in paragraph 1 and leaves Plaintiff to its proofs thereupon.

2. Defendant is without sufficient knowledge to admit or deny the allegations contained in paragraph 2 and leaves Plaintiff to its proofs thereupon.

3. Defendant admits the allegations contained in paragraph 3.

4. Defendant denies the allegations contained in paragraph 4 and leaves Plaintiff to its proofs thereupon.

5. Defendant is without knowledge as to the citizenship of Plaintiff and leaves Plaintiff to its proofs thereupon.

6. Defendant admits the allegations contained in paragraph 6 except to leave Plaintiff to its proofs on Plaintiff's claims arising out of the claimed contact.

7. Defendant admits that a contract between the parties provides for venue in federal or state court in Tarrant County, Texas.

8. Defendant is without sufficient information to admit or deny the allegations contained in paragraph 8 and leaves Plaintiff to its proofs thereupon.

9. Defendant is without sufficient information to admit or deny the allegations contained in paragraph 9 and leaves Plaintiff to its proofs thereupon.

10. Defendant admits the allegations contained in paragraph 10.

11. Defendant is without sufficient information to admit or deny whether the allegations contained in paragraph 11 are "typical" and leaves Plaintiff to its proofs thereupon.

12. Defendant admits the allegations contained in paragraph 12.

13. Defendant admits that the Agreement required Plaintiff to market, promote, and sell automative service contracts under a program administered by Defendant. To the extent any allegations assert any wrongdoing against Defendant, Defendant denies the allegations and leaves Plaintiff to its proofs thereupon.

14. Defendant admits that, initially, Plaintiff received funding directly from the finance company. To the extent any allegations assert any wrongdoing against the Defendant, the Defendant denies the allegations and leaves Plaintiff to its proofs thereupon.

15. Defendant denies the allegations contained in paragraph 15 and leaves Plaintiff to its proofs thereupon.

16. Defendant is without sufficient information to admit or deny the allegations contained in paragraph 16 and leaves Plaintiff to its proofs thereupon.

17. Defendant is without sufficient information to admit or deny the allegations contained in paragraph 17 and leaves Plaintiff to its proofs thereupon.

18. Defendant denies the allegations contained in paragraph 18 and leaves Plaintiff to its proofs thereupon.

19. Defendant is without sufficient knowledge to admit or deny the allegations contained in paragraph 19 as to which services are provided by Eleras and leaves Plaintiff to its proofs thereupon.

20. Defendant denies the allegations contained in paragraph 20 as written and leaves Plaintiff to its proofs thereupon.

21. Defendant admits that the Offset Pack Payment was refundable to the finance company on a *pro rata* basis in the event a policy was cancelled prior to expiration. To the extent any allegations assert any wrongdoing against Defendant, the Defendant denies the allegations and leaves Plaintiff to their proofs thereupon.

22. Defendant denies the allegations contained in paragraph 22 and leaves Plaintiff to its proofs thereupon.

23. Defendant denies the allegations contained in paragraph 23 and leaves Plaintiff to its proofs thereupon.

24. Plaintiff denies the allegations contained in paragraph 24 and leaves Plaintiff to its proofs thereupon.

25. Defendant denies the allegations contained in paragraph 25 and leaves Plaintiff to its proofs thereupon.

26. Defendant denies the allegations contained in paragraph 26 and leaves Plaintiff to it proofs thereupon.

27. Defendant denies the allegations contained in paragraph 27 and leaves Plaintiff to its proofs thereupon.

28. Defendant admits the allegations contained in paragraph 28 that Paylink Payment Plans financed the warranty contracts at issue when Plaintiff and Defendant entered into the Agreement. Defendant further incorporates its prior responses to Paragraphs 15 through 27 as if set forth verbatim herein.

29. Defendant admits the allegations contained in paragraph 29 that Plaintiff moved financing to Walco but leaves Plaintiff to its proofs on the remaining allegations.

30. Defendant is without sufficient information to admit or deny the allegations contained in paragraph 30 and leaves Plaintiff to its proofs thereupon.

31. Defendant denies the allegations contained in paragraph 31 and leaves Plaintiff to its proofs thereupon.

32. Defendant is without sufficient information to admit or deny the allegations contained in paragraph 32 and leaves Plaintiff to its proofs thereupon.

33. Defendant is without sufficient information to admit or deny the allegations contained in paragraph 33 and leaves Plaintiff to its proofs thereupon.

34. Defendant admits that Defendant would send Plaintiff and/or Eleras Offset Pack Payments, subject to an offset for any refunds owed to customers that had not been made by Plaintiff and/or Eleras. To the extent any allegations assert any wrongdoing against Defendant, the Defendant denies the allegations and leaves Plaintiff to its proofs thereupon.

35. Defendant admits that, following the Parties' switch in finance providers to Walco, funds throwed through Defendant. To the extent any allegations assert any wrongdoing against Defendant, the Defendant denies the allegations and leaves Plaintiff to its proofs thereupon.

36. Defendant denies the allegations contained in paragraph 36 and leaves Plaintiff to its proofs thereupon.

37. Defendant denies the allegations contained in paragraph 37 and leaves Plaintiff to its proofs thereupon.

38. Defendant denies the allegations contained in paragraph 38 and leaves Plaintiff to its proofs thereupon.

39. Defendant denies the allegations contained in paragraph 39 that the overpayments claimed by Defendant were "unidentified" and leaves Plaintiff to its proofs thereupon.

40. Defendant denies the allegations contained in paragraph 40 that assert any wrongdoing on the part of Defendant and leaves Plaintiff to its proofs thereupon.

41. Defendant admits that Defendant received a demand letter sent on or about August 6, 2024. To the extent any allegations assert any wrongdoing against Defendant, the Defendant denies the allegations and leaves Plaintiff to its proofs thereupon.

42. Defendant admits Defendant needed to conduct a reconciliation of its accounts, and began to conduct such a reconciliation. To the extent any allegations assert any wrongdoing against Defendant, the Defendant denies the allegations and leaves Plaintiff to its proofs thereupon.

43. Defendant denies the allegations contained in paragraph 43 and leaves Plaintiff to its proofs thereupon.

44. Defendant admits that Plaintiff made such a demand, but denies that Plaintiff was owed the amount claimed. To the extent any allegations assert any wrongdoing against Defendant, the Defendant denies the allegations and leaves Plaintiff to its proofs thereupon.

45. Defendant denies that Defendant refused to pay Plaintiff for wrongfully withheld Offset Pack Payments, as Defendant denies that payments were wrongfully withheld. Defendant admits Defendant invoked the mediation provision of the Parties' Agreement. To the extent any allegations assert any wrongdoing against Defendant, the Defendant denies the allegations and leaves Plaintiff to its proofs thereupon.

46. Defendant admits to the allegations contained in paragraph 46.

47. Defendant incorporates its prior responses in paragraphs 1-46 above as if set forth verbatim herein.

48. The allegations in paragraph 48 state a legal conclusion regarding the terms of the Agreement to which an admission or denial is not required. To the extent the allegations contained in paragraph 48 assert any wrongdoing against Defendant, such allegations are denied.

49. Defendant denies the allegations contained in paragraph 49 and leaves Plaintiff to its proofs thereupon.

50. Defendant denies the allegations contained in paragraph 50 and leaves Plaintiff to its proofs thereupon.

51. Defendant denies the allegations contained in paragraph 51 and leaves Plaintiff to its proofs thereupon.

52. Defendant denies the allegations contained in paragraph 52 and leaves Plaintiff to its proofs thereupon.

53. Defendant incorporates its prior responses to paragraphs 1-52 above as if set forth verbatim herein.

54. Defendant admits that the quotation is from Section 11.4 of the Parties' Agreement. To the extent any allegations assert any wrongdoing against Defendant, the Defendant denies the allegations and leaves Plaintiff to its proofs thereupon.

55. Defendant is without sufficient information to admit or deny the allegations contained in paragraph 55 and leaves Plaintiff to its proofs thereupon.

56. Defendant is without sufficient information to admit or deny the allegations contained in paragraph 56 and leaves Plaintiff to its proofs thereupon.

57. Defendant is without sufficient information to admit or deny the allegations contained in paragraph 57 and leaves Plaintiff to its proofs thereupon.

58. Defendant denies the allegations contained in paragraph 58 and leaves Plaintiff to its proofs thereupon.

59. Defendant denies the allegations contained in paragraph 59 and leaves Plaintiff to its proofs thereupon.

60. Defendant incorporates its prior responses 1-59 above as if set forth verbatim herein.

61. Defendant denies the allegations contained in paragraph 61 and leaves Plaintiff to its proofs thereupon.

62. Defendant denies the allegations contained in paragraph 62 and leaves Plaintiff to its proofs thereupon.

63. Defendant denies the allegations contained in paragraph 63 and leaves Plaintiff to its proofs thereupon.

64. Defendant denies the allegations contained in paragraph 64 and leaves Plaintiff to its proofs thereupon.

65. Defendant denies the allegations contained in paragraph 65 and leaves Plaintiff to its proofs thereupon.

66. Defendant denies the allegations contained in paragraph 66 and leaves Plaintiff to its proofs thereupon.

67. Defendant incorporates its prior responses to paragraphs 1-66 as if set forth verbatim herein.

68. Defendant denies the allegations contained in paragraph 68 and leaves Plaintiff to its proofs thereupon.

69. Defendant denies the allegations contained in paragraph 69 and leaves Plaintiff to its proofs thereupon.

70. Defendant denies the allegations contained in paragraph 70 and leaves Plaintiff to its proofs thereupon.

WHEREFORE, Defendant demands judgment dismissing with prejudice each and every count of Plaintiff's Complaint, together with costs and attorneys' fees, and such other and further relief as the Court deems fair and just.

## **SEPARATE AND AFFIRMATIVE DEFENSES**

In addition to the denials contained above, Defendant pleads the following separate and affirmative defenses, and respectfully reserves the right to amend as appropriate before trial, and pleads as follows:

### FIRST SEPARATE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands in that Plaintiff failed to make refunds required to be made by Plaintiff, and Plaintiff acted with unclean hands in encouraging individuals to cancel policies with Headstart so that Plaintiff and/or Eleras could sell them a separate policy.

### SECOND SEPARATE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of laches. Plaintiff allowed Defendant to retain refunds that went unpaid by Plaintiff, as required by the Agreement, and did not bring the issue to Defendant's attention until they could assert a claim for, purportedly, millions of dollars.

### THIRD SEPARATE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel. Plaintiff is estopped from recovering because Plaintiff itself refused to return funds as required by the Agreement, and acted in bad faith by (a) misrepresenting its cancellation rate, and (b) encouraging customers to cancel policies with Headstart and sign a separate policy with Plaintiff and/or Eleras.

### FOURTH SEPARATE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the course of doing business in the industry in which the parties are engaged. Specifically, to the extent the Agreement is vague or unclear as to Plaintiff's duties to refund its share of a policy in the event of a policy cancellation

(which Defendant denies), the Agreement should be interpreted in light of industry standards, through which an administrator would not agree to pay a Payment to an agent such as Plaintiff and/or Eleras without right to reimbursement in the event of a policy cancellation.

### FIFTH SEPARATE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver. Plaintiff waived its claims by knowingly allowing the Defendant to pursue the course of action described in Plaintiff's Complaint, without complaint, until Plaintiff decided to make a claim for several million dollars.

### SIXTH SEPARATE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the express terms of the parties' Producer Agreement ("Agreement") that governs the parties' business relationship, which specifically requires Plaintiff to refund the *pro-rata* amounts owed to a customer following a policy cancellation.

### SEVENTH SEPARATE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the good faith and/or fair dealing set forth in paragraph 8.2 of the Agreement.

### EIGHTH SEPARATE DEFENSE

Plaintiff's claims are barred, in whole or part, by Plaintiff's wrongful retention and/or concealment of monies it received, but was not due under the Agreement.

### NINTH SEPARATE DEFENSE

Plaintiff's damages, if any, are barred, in whole or part, from recovery or reduced due to their own failure to mitigate damages by either refunding their portion of the claims themselves, as required by the Agreement, or by notifying Defendant sooner of Plaintiff's concerns.

## TENTH SEPARATE DEFENSE

Plaintiff's claims are barred, in whole or part, by the Doctrine of Accord and Satisfaction. Notably, Plaintiff received all funds it was duly owed after Defendant accounted for Plaintiff's offsets.

## ELEVENTH SEPARATE DEFENSE

Defendant is entitled to an offset against any amounts claimed due by Plaintiff under the Agreement to the extent (a) that Plaintiff has unjustly retained monies it was not due under the Agreement and which should have been refunded to Defendant, (b) that monies were mistakenly paid by Defendant to Plaintiff and wrongfully retained by Plaintiff, (c) that Plaintiff has recouped these monies through alternate means, notably, through funds recouped by entering into a similar arrangement with contract holders of Defendant who subsequently entered into contracts with Plaintiff and/or Eleras Group, LLC and/or Third-Party competitors of Defendant where Plaintiff is receiving a financial benefit.

## TWELFTH SEPARATE DEFENSE

Plaintiff's claims are barred, in whole or part, by Plaintiff's prior material breach of the Agreement, where Plaintiff breached its requirement to refund monies to customers, and breached the duty of good faith and fair dealing required by the Agreement.

## THIRTEENTH SEPARATE DEFENSE

Plaintiff's claims are barred, in whole or in part, based upon the doctrine of mistake. To the extent Plaintiff asserts that Defendant was not required to issue refunds on Plaintiff's behalf, Defendant was mistaken as to its responsibility to issue refunds.

Defendant reserves the right to assert all additional defenses disclosed or developed during the course of discovery, arbitration, mediation, and/or trial.

## **COUNTERCLAIM**

Defendant/Counter-Plaintiff, Headstart Warranty Group, Inc. LLC ("Headstart") files the below Counterclaims against Plaintiff/Counter-Defendant, Evercare Protection, LLC ("Evercare") as follows:

### FACTUAL ALLEGATIONS

1. Headstart incorporates the citizenship allegations contained in Evercare's Complaint as if set forth verbatim herein.

2. Upon information and belief, there is complete diversity of citizenship between Plaintiff and Defendant as alleged in Paragraph 5 of Evercare's Complaint.

3. Evercare is subject to personal jurisdiction in this Court because it has availed itself of the jurisdiction of this Court in its Complaint, and has availed itself to the privileges and benefits of doing business in Texas, as alleged in Evercare's Complaint.

4. Venue is proper in this Court and Division pursuant to the forum selection clause contained in the parties' Producer Agreement ("Agreement"), and venue is proper given that Headstart's claims arise out of the same business relationship that governs the claims brought by Evercare in its Complaint.

5. Headstart incorporates as if set forth verbatim herein all prior admissions and/or denials contained in Evercare's Complaint and Headstart's responsive pleadings.

6. On or about August 30, 2023, Evercare and Headstart entered into the Agreement whereby Evercare was to market and sell Headstart's products (ie. Service contracts).

7. When Evercare sold a Headstart product, and the customer paid Headstart for the product, the service contract would be activated and Evercare would be paid fees associated with the sale of the product and receipt of the product costs by Headstart.

8. At the inception of the parties' relationship, Plaintiff represented to Headstart that Plaintiff's cancellation rates for service contracts it sold on behalf of Headstart would range between twenty-five percent (25%) and thirty percent (30%).

9. Under the Agreement, Evercare had several specific duties, including to:

    a. Upon cancellation of a Contract with a Customer, Evercare "shall cancel such Contract and [Evercare] shall be solely responsible to remit to the Contract Holder or finance company that portion of the Contract Charge to be refunded" (Section 2.6); and

    b. A duty to operate in good faith (Section 8.2).

10. The Agreement further provided that it may only be modified by the written consent of both parties.

11. Nowhere did the Agreement require Headstart to refund Evercare's portion of any money required to be refunded to a Customer upon cancellation, termination or expiration; but rather, the Agreement specifically stated that Evercare's "liability for refunding its portion of a Contract Holders or finance company's refund shall survive cancellation, termination, or expiration of this Agreement" (Section 2.9).

12. Headstart began receiving cancellation requests from Customers/Contract Holders sold by Evercare, and processed those cancellation requests, and thereafter made all refunds to these Customers.

13. Headstart soon discovered that seventy-five percent (75%) of these customers who purchased Headstart service contracts through Evercare were cancelling their service contracts despite Evercare's prior representations that its cancellation rates would be approximately one-third of that number.

14. Headstart further learned from its customers that Evercare and/or, upon information and belief, affiliates of Evercare, had contacted customers of Headstart, and encouraged these customers to cancel their service contracts administered by Headstart, and diverted such customers to other administrators who are competitors of Headstart.

15. This practice occurred, upon information and belief, even after Headstart had paid Evercare for the sale of the service contract.

16. Headstart then made refunds of amounts due to customers who cancelled their contracts, including that portion of the refund that was solely Evercare's obligation pursuant to Sections 2.6 and 2.9 of the Agreement.

17. Headstart then inadvertently and/or mistakenly made payments to Evercare based upon service contracts allegedly sold by Evercare to customers who never remitted the sale proceeds to Headstart.

18. When service contracts are sold, but the sale proceeds are not remitted by the customer or its financing agent and received by Headstart, the service contracts are not activated.

19. When Headstart demanded that Evercare return and/or refund the monies mistakenly paid to Evercare based upon service contracts allegedly sold by Evercare, but which were never paid for and received by Headstart, Evercare refused to return and/or refund the monies to Headstart.

20. Evercare contended that it was entitled to retain the proceeds from the sale of a service contract that was never funded by or on behalf of the customer.

21. Implicit in the Agreement is that for Evercare to be entitled to receive any monies for the purported sale to a customer, the customer needs to pay for the service contract.

22. The Agreement provides that the service contract must be sold and administered by Headstart.

23. Headstart does not administer service contracts that are not funded, or which are cancelled by the customer.

24. Headstart then offset those amounts that were mistakenly paid by Headstart to Evercare in connection with cancellations or service contracts that were never funded from other funds that Evercare claimed due under the Agreement.

25. Evercare refused to return the monies it mistakenly received from Headstart and to which it was never entitled.

## COUNT 1 – BREACH OF CONTRACT

26. Headstart incorporates its prior allegations in paragraphs 1-24 of the Counterclaim as if fully set forth herein.

27. Headstart and Evercare are parties to the Producer Agreement which is an enforceable and binding agreement.

28. Headstart performed its obligations under the Agreement.

29. Evercare is only entitled to monies under the Agreement for service contracts that it sold that were funded by the customer.

30. Evercare is obligated to refund a portion of the monies it received if the customer cancels as set forth in the Agreement.

31. Evercare breached the Agreement by:

   a. Wrongfully retaining monies it mistakenly received, but which were not due to it under the Agreement as the customer never paid Headstart for the service contract.

    b. Wrongfully retaining monies it received, and not remitting back to Headstart monies due from Evercare as a result of customer cancellations that were refunded by Headstart to the customer.

    c. Failing to make refunds to customers required under the Agreement.

    d. Breaching its duty of good faith owed to Headstart by misrepresenting its cancellation rates.

    e. Breached its duty of good faith by contacting customers of contracts administered by Headstart and encouraging them to cancel their contracts with Headstart and, upon information and belief, diverting these customers to Headstart's competitors.

    f. By concealing and otherwise failing to disclose to Headstart that Evercare had mistakenly been paid by Headstart for service contracts that had not been funded by the customer.

32. As a direct result of Evercare's breach of the Agreement, Headstart has suffered damages, including but not limited to that portion of the cancellations refund that was Evercare's obligation but which was paid back to the customer by Headstart, the monies mistakenly paid by Headstart to Evercare for service contracts that were never funded, and damages related to the cancellation of contracts by Headstart's customers who were wrongfully solicited by Evercare, or at Evercare's direction, to terminate their relationship with Headstart and, upon information and belief, move to a competitor of Headstart.

33. Further, Headstart was forced to defend itself and assert these Counterclaims by hiring the attorneys listed below, and is entitled to recover those amounts under the Agreement and Texas law.

## COUNT 2: UNJUST ENRICHMENT

34. Headstart incorporates its prior allegations in paragraphs 1-33 of the Counterclaim as if fully set forth herein.

35. Evercare was required to refund all amounts that the Agreement required to be refunded by Evercare, which included Evercare's portion of all payments made to Evercare that were required to be refunded under the cancellation provision in the Agreement, and to refund and otherwise return all payments made to Evercare mistakenly by Headstart for service contracts that were never funded.

36. Evercare did not make the refunds the Agreement required Evercare to make, or return the monies mistakenly paid to Evercare by Headstart, but instead wrongfully retained these monies.

37. In the alternative to a breach of the Agreement, Headstart is entitled to recover any amounts Headstart refunded to its customers and/or the customers' finance company that should have been refunded by Evercare and/or to offset those amounts that should have been made by Evercare.

38. Headstart is also entitled to recover any amounts Headstart mistakenly paid to Evercare for service contracts that Evercare reported it sold, but which were never funded and paid to Headstart.

39. As a result, Headstart has suffered damages.

## COUNT 3: TORTIOUS INTERFERENCE WITH CONTRACTS

40. Headstart incorporates its prior allegations in paragraphs 1-39 as if fully set forth herein.

41. Headstart was separately party to numerous contracts with customers and/or finance companies through which Headstart administered those contracts.

42. As a result of those contracts and/or relationships, Headstart had a reasonable expectation to obtain financial benefit through its administration of those contracts.

43. Evercare knew of Headstart's contractual relationships, some of which it was paid for by Headstart under the Agreement.

44. Evercare intentionally interfered with Headstart's contractual relationships by contacting those customers and suggesting and/or encouraging those customers to cancel their contracts administered by Headstart and to, upon information and belief, switch to other administrators who are competitors of Headstart where Evercare received a financial benefit from the other administrator.

45. As a result, Headstart has suffered damages in the amount of the financial benefit(s), including lost profit, that Headstart expected to obtain through those existing and prospective business relationships in an amount to be determined at trial, plus the amount of monies paid by Headstart to Evercare to create certain of those contractual relationships.

### COUNT 4: MISREPRESENTATION

46. Headstart incorporates its prior allegations in paragraphs 1-44 as if fully set forth herein.

47. Evercare represented to Headstart that its cancellation rate for the parties' relationship would range between twenty-five percent (25%) and thirty percent (30%) of the total contracts sold by Evercare on behalf of Headstart.

48. Headstart reasonably relied upon Evercare's representations in entering into the Agreement and agreeing upon the compensation to Evercare under the Agreement.

49. Evercare's actual cancellation rates under the Agreement with Headstart averaged seventy-five percent (75%) which resulted in substantially less profits for Headstart under the Agreement than anticipated based upon Evercare's representations.

50. As a direct result of Evercare's misrepresentations to Headstart concerning its cancellation rate, Headstart was damaged.

51. Further, Evercare misrepresented to Headstart when it mistakenly received payment for contracts that were not funded, and for contracts that had been cancelled, by omitting to tell Headstart that it had received payments in error.

**WHEREFORE**, Defendant respectfully requests judgment in its favor and against the Plaintiff, prays that Plaintiff(s) take nothing, prays that Defendant recover its damages and expenses as set forth herein, including reasonable attorneys' fees and costs, pre-judgment and post-judgment interest as allowed by law, and asks for any such other and further relief to which Defendant may be entitled.

Submitted this 1st day of December, 2025.

        Respectfully Submitted,
        By: *Blue Rannefeld*
        Blue Rannefeld
        Attorney at Law, SBN# 24003335
        777 Main Street, Suite 600
        Fort Worth, Texas 76102
        817-600-7637

        Barry Guaglardi, Pro Hac
        Attorney at Law, (ID# 030761989)
        365 West Passaic Street, Suite 130
        Rochelle Park, New Jersey 07662
        (201) 947-4100
        ATTORNEY FOR DEFENDANT

**CERTIFICATE OF SERVICE**

I hereby certify that on December 1, 2025, a true and correct copy of this document was served upon counsel of record via the Court's electronic filing system.

/s/ *Blue Rannefeld*
Blue Rannefeld